FILED
U.S. DISTRICT COURT
2008 AUG -5 AM 11: 41
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 108-021 |
| | ) | |
| TERRY LEE ROBINSON | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On May 12, 2008, Defendant Terry Lee Robinson filed a "Motion to Dismiss" the Indictment (doc. no. 28), which the government opposes (doc. no. 40). The government filed a response to Defendant's motion to dismiss. (Doc. no. 40). After the filing of a Superseding Indictment, (doc. no. 33), Defendant re-urged his previously filed motions, including the motion to dismiss (Doc. no. 41). For the reasons that follow, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

The Superseding Indictment charges that Defendant:

> a person required to register under the Sex Offender Registration and Notification Act, having been adjudicated guilty on February 16, 1999, in the First Judicial Circuit Court, Okaloosa County, Florida, Case No. 97-1132-CFA of one (1) count of Committing a Lewd and Lascivious Act in the Presence of a Child under the age of sixteen in violation of Florida Statutes Section 800.04, did travel in interstate commerce and did knowingly fail to register and to update his registration as required, in violation of Title 18, United States Code, Section 2250(a).

(Doc. no. 33, p. 1).

Defendant contends that the Sexual Offender Registration Act ("SORNA") violates the United States Constitution in six ways. First, Defendant contends that 18 U.S.C. § 2250,

as it applies to the registration component of SORNA, is unconstitutional as Congress exceeded it authority under Commerce Clause of the United States Constitution. (Doc. no. 28, pp. 5-11). Second, Defendant contends that SORNA violates the non-delegation doctrine in that Congress impermissibly delegated to the Attorney General the crucial decision of whether the act should be applied retroactively. (Id. at 11-12). Third, Defendant contends that SORNA violates the Ex Post Facto clause of the Constitution because he is being punished for an act committed prior to the passage of the Adam Walsh Act. (Id. at 12-15). Fourth, Defendant contends that SORNA violates both his substantive and procedural due process rights under the Fifth Amendment because: (1) SORNA provides no mechanism to challenge the registration or designation process or have a hearing; (2) Defendant did not receive any notice of SORNA or its requirements; and (3) SORNA has not been implemented by any state. (Id. at 15-20). Fifth, Defendant contends that the Attorney General's regulation retroactively applying SORNA violates the Administrative Procedures Act ("APA") because it was promulgated absent a 30-day notice and comment period. (Id. at 22-24). Finally, Defendant contends that SORNA impermissibly encroaches upon State power and therefore violates the Tenth Amendment. (Id. at 24-26). The Court will address each of Defendant's contentions in turn.

## I. FACTUAL BACKGROUND

In the First Judicial Circuit Court of Okaloosa County, Florida, Defendant pled no contest to one count of Committing a Lewd and Lascivious Act on Another in the Presence of a Child under the age of sixteen in violation of Florida Statutes § 800.04, and judgment was entered on February 16, 1999. (Doc. no. 40, p. 2). He was classified as a sex offender

under Florida law. (Id. at 3).

Defendant was sentenced to thirty-six (36) months in prison, suspended one (1) year community control, followed by two (2) years of probation. (Id.). Defendant served 36 months in prison for violation of probation. (Id.). Upon his release, he was required to register as a sex offender, and did so, under the Sex Offender Registration and Notification Act in Florida in April 2004. (Id.). Defendant updated his registration papers approximately six times with the Okaloosa County Sheriff's Office. (Id.). The form signed by Defendant provided for an acknowledgment by Defendant that he understood the requirements that he must notify Florida officials within 48 hours of a change of residence and that failure to comply with sex offender registration requirements is a criminal offense. (Id.). Although Defendant initially complied with the registration requirements, eventually, his compliance ceased, and, he was arrested approximately four times in Florida for failing to keep his registration requirements current. (Id.).

On June 6, 2008, the federal grand jury returned a one count superseding indictment against Defendant charging that from on or about September 1, 2007 until December 5, 2007 Defendant "did travel in interstate commerce and did knowingly fail to register and update his registration as required in violation of Title 18 United States Code, Section 2250(a)." (Id.). Finally, in support of this charge, the government contends that there is no record of Defendant's registration in Georgia, and the government maintains that it has evidence that he has traveled between Alabama, Florida, and Georgia since August of 2007 without registering as a sex offender. (Id.).

## II. SORNA

The Adam Walsh Child Protection and Safety Act of 2006 ("the Act"), Pub. L. No. 109-248, was enacted on July 27, 2006. Title I of the Act encompasses SORNA, Pub. L. No. 109-248 §§ 1-155, 120 Stat. 587, 590-611 (2006). SORNA provides a definition for the term "sex offender" and addresses the various tiers of sex offender status. 42 U.S.C. § 16911. SORNA requires that a sex offender initially register before completing his imprisonment sentence or not later than three business days after being sentenced, if no term of imprisonment is imposed. Id. § 16913(b). SORNA also requires every jurisdiction to maintain a sex offender registry conforming to the requirements of SORNA. Id. § 16912. Pursuant to SORNA, a sex offender is required to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." Id. § 16913(a). In general, a sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. Id. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence. Id. For purposes of keeping the registration current:

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

Id. § 16913(c).

4

Congress also vested the Attorney General with:

> the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Id. § 16913(d). Thus, on February 28, 2007, the Attorney General issued an interim order applying the SORNA registration requirements to all sex offenders who were convicted of an offense for which registration was required before the enactment of the Act. 28 C.F.R. § 72.3.[1] The interim rule was made immediately effective in the absence of a pre-publication notice and comment period.

In conclusion, a sex offender who is required to register under SORNA, travels in interstate or foreign commerce, and knowingly fails to register or update the registration faces a fine or imprisonment of up to 10 years, or both. 18 U.S.C. § 2250(a).

## III. DISCUSSION

### A. Commerce Clause

Defendant contends that it is beyond Congress's reach under the Commerce Clause to direct individuals convicted of purely local offenses to register as state sex offenders. Consequently, he asks the Court to determine that 42 U.S.C. §§ 16913-16916 is

---

[1] 28 C.F.R. § 72.3 provides:

Applicability of the Sex Offender Registration and Notification Act. The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.

5

unconstitutional under United States v. Morrison, 529 U.S. 598 (2000), United States v. Lopez, 514 U.S. 549 (1995) and United States v. Jones, 529 U.S. 848 (2000). (Doc. no. 28, pp. 7-13).

Article I, Section 8 of the Constitution grants Congress the power to regulate commerce within and between the States. The Supreme Court has outlined three areas under which legislation must fall to be within Congress' Commerce Clause power. See United States v. Lopez, 514 U.S. 549 (1995). In applying Lopez, the Eleventh Circuit explained, the Commerce Clause enables Congress (1) to regulate the use of channels of interstate commerce, (2) to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even if the threat may derive only from intrastate activities, and (3) to regulate activities with a substantial relation to interstate commerce. United States v. Scott, 263 F.3d 1270, 1271-72 (11th Cir. 2001) (citing Lopez, 514 U.S. at 558-59).

Here, Defendant asserts that the facts of the present case fall under the third prong of Lopez. Defendant argues that the registration requirements have nothing to do with the "channels" of interstate commerce, and the registration requirements are imposed on individuals who are not in interstate commerce or have any connection to interstate commerce; therefore, neither the first nor the second prong of Lopez apply to the instant case. (Doc. no. 28, p. 7). Defendant therefore concludes that the registration requirements can only be upheld if they regulate "those activities that substantially affect interstate commerce." (Id.).

Defendant contends that the registration requirements can only be upheld if they

substantially affect interstate commerce. Defendant claims that the Act does not have any jurisdictional element; and second, even if it did have a jurisdictional element, SORNA has no nexus whatsoever to interstate commerce. The Court disagrees.

Initially, the Court notes that most district courts have uniformly rejected Defendant's Commerce Clause arguments. See, e.g., United States v. Beasley, 2007 WL 3489999, slip op. at *10 (N.D. Ga. Oct. 10, 2007) (holding that § 2250(a)(2)(B) contains a sufficient nexus to interstate commerce because the statute derives its authority from the second prong of Lopez - the ability to regulate persons or things in interstate commerce); see also United States v. Zuniga, 2008 WL 2184118, slip op. at 18 (D. Neb. May 23, 2008) (noting the district court's uniform rejection of Defendant's commerce clause argument (citing United States v. Utesch, 2008 WL 656066, slip op. at *14 (E.D. Tenn. Mar. 6, 2008); United States v. Dixon, 2007 WL 4553720, slip op. at *5 (N.D. Ind. Dec. 18, 2007); United States v. Elliott, 2007 WL 4365599, slip op. at *3 (S.D. Fla. Dec. 13, 2007); United States v. Gould, 526 F.Supp.2d 538, 547 (D. Md. 2007); United States v. Cardenas, 2007 WL 4245913, slip op. at *12 (S.D. Fla. Nov. 29, 2007); and United States v. Hinen, 487 F.Supp.2d 747, 757-8 (W.D. Va. 2007)).

In fact, the Court is aware of only two district courts that have concluded that Congress did not have the authority under the Commerce Clause to enact § 2250. See United States v. Powers, Criminal Case No. 607-221, 2008 WL 1757721 (M.D. Fla. Apr. 18, 2008) (dismissing indictment on the basis that Congress did not have the authority under the Commerce Clause to enact § 2250) and United States v. Waybright, 2008 WL 2380946, slip op. at *7 (D. Mont. June 11, 2008) (holding that because § 16913 requires all sex offenders

in the United States to register regardless of whether they travel in interstate commerce because it does not substantially affect interstate commerce). Notably, another district court in the United States District Court for the Middle District of Florida rejected the analysis and conclusion set forth in Powers. See United States v. Mason, 2008 WL 1882255, slip op. at *1 (M.D. Fla. Apr. 24, 2008) (holding that enactment of SORNA was a valid use of Congress' power to 'protect the instrumentalities of interstate commerce, or persons or things in interstate commerce; noting that the Powers's court "gave only cursory treatment of the reasoning of this court and a number of others that have upheld SORNA's constitutionality.").

Similarly, although Waybright stands for the proposition that the § 16913 registration requirement does not substantially affect interstate commerce, a number of district courts that have analyzed SORNA under Lopez's third prong have concluded that SORNA had a substantial effect of interstate commerce. Mason, 2008 WL 1882255, slip op. at *2 n.3 (citing United States v. Holt, No. 3:07-cr-0630, 2008 WL 1776495, at *3 (S.D. Iowa Apr.14, 2008); Utesch, 2008 WL 656066 at *14-15; Dixon, 2007 WL 4553720 at *5).

1. **Second Prong Under Lopez**

Defendant in this case argues that the matter being regulated falls under Lopez's third prong, but this Court agrees with those courts finding that the it falls under Lopez's second prong. Defendant in this case, argues that the actual matter being regulated, the registration, has no connection to interstate commerce and is entirely an intrastate matter. This Court finds that SORNA's registration requirement falls within the second prong of Lopez, as it is focused precisely on the movement of persons in interstate commerce because it regulates

sex offenders who travel in interstate commerce. United States v. Ditomasso, 552 F.Supp. 2d 233, 245-46 (D.R.I. 2008) (noting that Supreme Court in Lopez stated instrumentalities of commerce include "persons or things in interstate commerce"); see also Hinen, 487 F.Supp.2d at 752 n.5. As such, because SORNA regulates persons (sex offenders) in interstate commerce it therefore falls under the second prong in Lopez.

### 2. Minimal Nexus Required

Defendant argues that in light of Lopez and Morrison, the Act does not bear a sufficient nexus with interstate commerce. However, contrary to the statutes addressed in Lopez and Morrison, as previously noted by the Court, SORNA has a jurisdictional element, and thus only requires a minimum nexus to interstate commerce. Scarborough v. United States, 431 U.S. 563 (1977) (explaining that only a minimal nexus with interstate commerce is required when statue expresses jurisdictional element). Simply put, the statute at issue in Lopez "'plow[ed] thoroughly new ground and represent[ed] a sharp break with the long-standing pattern of federal firearms legislation,'" because it lacked a jurisdictional element. Lopez, 514 U.S. at 563 (quoting with approval Lopez, 2 F.3d at 1366).

In addition, the Eleventh Circuit ruled that Congress may use a jurisdictional provision in a federal criminal statute to bring the statue within the commerce power. Mason, 2008 WL 1882255 at *2 n.3 (citing United States v. McAllister, 77 F.3d 387, 389-90 (11th Cir.1996) (upholding 18 U.S.C. § 922(g) which criminalizes a convicted felon's possession of a firearm that has traveled in interstate commerce); see also United States v. Shivers, 390 F.Supp.2d 1067, 1068 (N.D. Fla. 2005) (reconciling McAllister and Lopez)). In such cases, the crime need only have a "minimal nexus" to interstate commerce to survive

facial review. Id. (citing Shivers, 390 F.Supp.2d at 1068 (citing Scott, 263 F.3d at 1273-74; United States v. Dupree, 258 F.3d 1258, 1259 (11th Cir.2001); United States v. Chisholm, 105 F.3d 1357, 1357-58 (11th Cir.1997))).

SORNA has a minimal nexus to interstate commerce. As previously noted, it requires the travel of certain persons across state lines as well as knowingly failing to register or update the registration. The Supreme Court in Lopez specifically noted that, under the second prong, Congress may regulate "persons . . . in interstate commerce, even though the threat may come only from intrastate activities." 514 U.S. at 558. Also, as previously noted, the matter being regulated is the registration of a class of persons - the class of sex offenders. Ditomasso, 552 F.Supp. 2d at 246. The function of this statute is to regulate the movement of sex offenders in interstate commerce. Id. (citing Hinen, 487 F.Supp.2d at 752 n.5). SORNA, including the criminal component, prevents sex offenders from being lost in the cracks *between* state regulations, a matter which is beyond the power of any one state to comprehensively address. Id. (citing United States v. Reynard, 473 F.3d 1008, 1023-24 (9th Cir. 2007) ("Courts have consistently recognized that federal statutes enacted to help states address problems that defy a local solution constitute an appropriate exercise of Congress's Commerce Clause power. . . .")). As such, SORNA, by its terms, does not focus on merely intrastate matters. Id.

Finally, the Court finds that Defendant's argument that "the statute does not . . . require that the sex offender travel in interstate commerce in furtherance of a crime . . .," is likewise misguided. "There is no constitutional requirement under the second prong that the 'person . . . or thing . . . in interstate commerce' travels with intent or is moved with intent

to commit a crime." Ditomasso, 552 F.Supp. 2d at 274. As such, the Court concludes that SORNA is a proper exercise of Congressional authority under the Commerce Clause.

## B. Non-Delegation Doctrine

Defendant next asserts that Congress impermissibly delegated to the Attorney General the decision of whether the Act should be applied retroactively. (Doc. no. 28, pp. 11-12). "Congress may not constitutionally delegate its legislative power to another branch of government." Touby v. United States, 500 U.S. 160, 165 (1991). Congress vested the Attorney General with:

> the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d). The Eleventh Circuit has determined that § 16913(d) is comprised of two clauses: the first gives the Attorney General authority to determine whether SORNA applies retroactively to all sex offenders, and the second gives the Attorney General authority to promulgate rules regarding initial registration. United States v. Madera, 528 F.3d 852, 858 (11th Cir. 2008). Thus, the Eleventh Circuit found that Congress vested the Attorney General with sole discretion to determine SORNA's retroactivity. (Id.) (concluding that 28 C.F.R. § 72.3 is more than a mere regulation regarding the mechanical aspects of how previously convicted sex offenders should initially register under the statute).

The Supreme Court has only twice found the nondelegation doctrine violated. See Panama Refining Co. v. Ryan, 293 U.S. 388 (1935); A.L.A.Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935). Conversely, the Supreme Court has concluded that

11

legislative action is not a forbidden delegation of legislative power where Congress sets forth intelligible principles to which the person or body authorized to exercise the delegated authority is directed to conform. United States v. Mistretta, 488 U.S. 361, 379 (1989); see also J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394 (1928).

Here, Congress authorized the Attorney General to determine the retroactivity of SORNA to offenders convicted before SORNA's enactment. Given the Department of Justice's prior experience with statutes similar to SORNA, the direction to "specify the applicability" of SORNA to those convicted before its enactment is sufficiently intelligible and does not violate the non-delegation doctrine.[2] Gould, 526 F.Supp. 2d at 545-46.

## C. Ex Post Facto Clause

Defendant also argues that the crime alleged in the Superseding Indictment purports to punish Defendant for acts he committed prior to the passage of the Act, which violates the Ex Post Facto Clause of the Constitution.[3] (Doc. no. 28, pp. 12-15). Further, Defendant claims that the Act is Criminal and punitive in nature. (Id.). Specifically he argues that the Act is punitive because it: (1) broadens the class of offenders subject to registrations; (2) lengthens the duration of registration; (3) creates classes of offenders; (4) reduces the time frame for the affected individual to advise officials of any change to his registration

---

[2]The Attorney General has previously been tasked with enforcing SORNA's predecessor offender statute, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. § 14071 (2000). Gould, 526 F.Supp. 2d at 545-46.

[3]Alternatively, Defendant claims that even if the Act is civil and non-punitive, the statutory scheme of the Act is so punitive in purpose or effect as to negate [Congress'] intention to deem it civil.

information; (5) increases the penalties for violating any of its registration requirements; (6) does not provide for a finding that there was a high risk of recidivism or that the publication notification would promote public safety; and (7) the act of not registering was placed in Title 18, the criminal Title. (Doc. no. 28, pp. 14-17).

Article 1, Section 9, Subsection (3) of the United States Constitution states: "No Bill of Attainder or Ex Post Fact Law shall be passed." "The Ex Post Facto clause is violated when a law defining a crime or increase in punishment for a crime, is applied to events that occurred before its enactment, to the disadvantage of the offender. Smith v. Doe, 538 U.S. 84, 92 (2003).

SORNA was enacted on July 27, 2006, and the Attorney General issued its interim rule on February 28, 2007. Although Defendant argues that he is being punished for a crime he committed before SORNA was enacted, his assertion is misguided. The Superseding Indictment charges Defendant with a failure to register between September 1, 2007, and December 12, 2007, therefore the trigger dates for the present charges are the dates between September 1, 2007 and December 12, 2007 and not the date of his 1999 conviction. As such, Defendant is being "punished" for failing to register during a time when both SORNA and the Attorney General's interim regulation were in effect. Thus, since SORNA applied to Defendant at the time he traveled in interstate commerce from September 1st to December 12th it does not have a retroactive effect and thus does not violate the Ex Post Facto clause. See United States v. Fuller, 2008 WL 2437869, slip op. at *3 (N.D.N.Y. June 13, 2008).

13

### D. Due Process: Procedural and Substantive

Defendant argues that SORNA violates his due process rights because: (1) it provides no mechanism to challenge the registration or designation process, or have a hearing; (2) Defendant did not receive any notice of SORNA or its requirements; and (3) SORNA has not been implemented by any state including Georgia.

Procedural due process does not require that a sex offender registration system based upon past convictions provide convicted sex offenders an opportunity to demonstrate non-dangerousness prior to being required to register. Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1, 7-8 (2003). Defendant asserts that the lack of an opportunity for a hearing violates his procedural due process rights as there is no procedural method for him to challenge the validity of a prior conviction prior to his name being published on the internet. However, the Supreme Court has held that where a registration requirement is triggered by the fact of a conviction - not dangerousness - a dangerousness hearing is not required because due process does not require the opportunity to prove a fact that is not material to the [s]tates statutory scheme. Id. at 4. Stated otherwise, because SORNA's registration requirement is triggered by Defendant's previous conviction, a hearing is not required.

Defendant also maintains that his substantive due process rights have been violated because he may be deprived of liberty when his name is listed on registries.[4] However, the

---

[4] To the extent Defendant argues that SORNA violates his substantive due process rights because a person may not be subject to the registration requirement because their conviction was set aside, Plaintiff lacks standing to raise such an argument. First, Defendant falls squarely within the category of persons required by Congress to register; second, Defendant can allege no injury traceable to this alleged constitutional deficiency in the statute. See Hinen, 487 F. Supp. 2d at 754-55.

14

Eleventh Circuit has previously rejected Defendant's argument that a sex offender registration requirement violates an individuals substantive due process rights. See Doe v. Moore, 410 F.3d 1337, 1345-46 (11th Cir. 2005) (concluding that convicted sex offenders do not have a fundamental right to refuse to register to avoid publication of personal information, because such a right is not fundamental).

Defendant's contention that the instant prosecution violates his due process rights because he had no actual notice of the Act or its registration requirement, is also misguided. Several district courts have concluded that "the terms of the statute do not mandate that those already registered as sex offenders or those who should have been registered as sex offenders receive any specific notice regarding its requirement." Hinen, 487 F. Supp. 2d at 754. The fact that the defendant may not have been advised of the specific requirements of SORNA is not determinative. Id. Similarly, the United States District Court for the Eastern District of Kentucky held:

> [This] due process argument misapprehends the notice requirements in SORNA. Although the statute provides that officials give notice, it does not make receipt of notice an element of the offense. The fact that the defendant was unaware that he was allegedly in violation of SORNA by not registering is not an affirmative defense. If failure to have specific knowledge of the particular statute you have been accused of violating were a prerequisite to conviction, there would rarely, if ever, be a conviction. Due process does not require specific notice. See Dixon, No. 3:07-CR-72(01)RM, 2007 WL 4553720, at *4 ("Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so. . . . Sex offenders . . . must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation.") (internal citation and quotation omitted). To hold specific notice is required under SORNA would add a constitutional requirement where one has never been required.

United States v. Samuels, 543 F. Supp. 2d 669, 673-74 (E.D. Ky. 2008); see also Ditomasso, 552 F.Supp. 2d at 244 (holding that the statute does not require a defendant to knowingly fail to register or updated a registration with the intent to violate SORNA). Finally, the Court is not persuaded by Defendant's argument that SORNA has not been implemented by any State including Georgia, and thus he has not received due process. To that end, courts have held that the due process clause does not require notice that failure to register as a sex offender violates the federal law set forth in SORNA; and that sufficient due process is afforded if the defendant had notice that failing to register or update his sex offender registration was illegal. Zuniga, 2008 WL 2184118 at *16 (citing United States v. Howell, 2008 WL 313200, at *8 (holding that a defendant who registered as a sex offender in Michigan, but failed to register upon moving to Iowa, had sufficient notice that his conduct was illegal as both Michigan and Iowa had laws requiring sex offenders to register). Here, Defendant was aware that he was required to register as a sex offender under Florida law. In fact, initially after Plaintiff was released from incarceration, he complied with these registration requirements. Additionally, by signing the registration forms, Defendant acknowledged that he must notify Florida officials within 48 hours of a change of residence and that a failure to comply with the sex offender registration requirements is a criminal offense. Therefore, Defendants notice that he was required to register as a sex offender is adequate notice under SORNA.

E.     **Administrative Procedures Act**

Defendant next contends that the Attorney General's interim regulation, which applies SORNA retroactively, violates the APA. 5 U.S.C. § 553 provides in relevant part

that this subsection does not apply-when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b)(3)(B). As to the requirement that a rule should not be promulgated less than 30 days before its effective date, another exception applies where "otherwise provided by the agency for good cause found and published with the rule." 5 U.S.C. § 553(d)(3).

Regarding the interim regulation at issue here, the Attorney General determined that:

> the immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements-and related means of enforcement, including criminal liability under 18 U.S.C. § 2250 for sex offenders who knowingly fail to register as required-to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

82 Fed.Reg. 39, 8894, 8896-97 (2007). Clearly, such constitutes sufficient justification in that any delay in implementation of what is an interim rule would be contrary to the overwhelming public interest in public safety. Thus, the interim Regulation does not violate the APA.

17

F.  **Tenth Amendment**

Lastly, Defendant argues that the registration requirements which impose a federal obligation on offenders to register in individual state-created and state-run sex offender registries are an unconstitutional encroachment of federal power on state sovereignty. (Doc. no. 28, p. 24).

Every federal decision found on this issue has rejected Defendant's Tenth Amendment argument. See, e.g., Hacker, 2008 WL 312689 at *2; Utesch, 2008 WL 656066 at *14-15; Gould, 526 F.Supp.2d at 549; United States v. Brown, 2007 WL 4372829, slip op. at *3; Cardenas, 2007 WL 4245913 at *14; United States v. Pitts, 2007 WL 3353423, slip op. at *9; Beasley, 2007 WL 3489999 at *10; Zuniga, 2008 WL 2184118 at *19-20.

The threshold question is whether Defendant has standing to raise such a claim. The United States Supreme Court has held that a private citizen, acting on his own behalf and not in an official capacity or on behalf of the state citizenry, lacks standing to raise a Tenth Amendment claim. See Tenn. Elec. Power Co. v. Tenn. Valley Auth., 306 U.S. 118, 144 (1939); see also Brooklyn Legal Servs. Corp. v. Legal Servs. Corp., 462 F.3d 219, 235 (2d Cir. 2006); Medeiros v. Vincent, 431 F.3d 25, 34 (1st Cir. 2005). As Defendant is a private citizen acting on his own behalf, and not in an official capacity or on behalf of Florida or Georgia, he lacks standing to raise a Tenth Amendment claim.[5]

---

[5]To the extent Defendant argues that because few states have created a SORNA registry, and the Act offers financial incentives to create SORNA compliant registries, the registration requirement forces state officials who run the local registries to accept federally required sex offender registrations before their state chooses to adopt the SORNA provisions (doc. no. 28, p. 25), his argument is misguided. Pursuant to Congress' constitutionally authorized spending power, (U.S. Const. Art. I, § 8, cl.1), Congress "may attach conditions on the receipt of federal funds . . . 'to further broad policy objectives by conditioning receipt

## IV. CONCLUSION

The Superseding Indictment alleges that Defendant, failed to register as a sex offender, or to update his registration after relocating from Florida to Georgia. (Doc. no. 33, p. 1). These allegations satisfy the statutory requirements of 18 U.S.C. § 2250(a), and application of the statute to Defendant does not offend the Constitution. For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

SO REPORTED and RECOMMENDED this 5th day of August, 2008 at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" South Dakota v. Dole, 483 U.S. 203, 206 (1987) (quoting Fullilove v. Klutznick, 448 U.S. 448, 474 (1980)). The Tenth Amendment is not violated when the federal government encourages states to enact SORNA's provisions as a condition to receipt of federal funding. Hacker, 2008 WL 312689 at *2; Gould, 526 F.Supp.2d at 549; Cardenas, 2007 WL 4245913 at *14. Finally, SORNA was enacted pursuant to Congress' legitimate exercise of authority under the Commerce Clause. As such, SORNA does not violate the Tenth Amendment. U.S. v. Crawford, 115 F.3d 1397, 1401 (8th Cir.1997). See also, Hacker, 2008 WL 312689 at *2; Cardenas, 2007 WL 4245913 at *14.